IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CANDY A. O.,

                          Plaintiff,

        v.                                        Civil Action No.
                                                  5:20-CV-0766 (DEP)


KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[1]

                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF                        JUSTIN M. GOLDSTEIN, ESQ.
KENNETH HILLER, PLLC                  KENNETH R. HILLER, ESQ.
6000 North Bailey Ave, Suite 1A
Amherst, NY 14226

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                MOLLY CARTER, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

---

[1]     Plaintiff's complaint named Andrew M. Saul, in his official capacity as the
Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi
took office as the Acting Social Security Commissioner. She has therefore been
substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the
Federal Rules of Civil Procedure, and no further action is required in order to effectuate
this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER[2]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, ineligible for the supplemental security income ("SSI") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

## I.   BACKGROUND

Plaintiff was born in October of 1981, and is currently forty years of age.  She was thirty-five years old at the time of her application for benefits in August of 2017.  Plaintiff stands five-foot and eight inches in height, and weighed between approximately one hundred and forty-six and one hundred and fifty-six pounds during the relevant time period.  Plaintiff is divorced and lives in Hubbardville, New York, with her boyfriend and four

---

[2]     This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

minor children.

In terms of education, plaintiff attended school until the tenth grade, but left after the death of her young son.  She reported to medical sources that she was in special education while in school.  She has not attained a GED.  Plaintiff last worked in 2007, and variously reported that she left her job at that time because they no longer needed her, because her ex-husband did not want her to work, and because of the pain in her back and legs.

Physically, plaintiff alleges that she suffers from pain in her back, neck, and right ankle that significantly limits her abilities.  She has received treatment primarily consisting of pain medication and physical therapy, although she did undergo surgery for her right ankle in the past.  Plaintiff's physicians have recommended surgery on her lumbar spine, but she has decided to wait out of concern over the risks associated with the procedure.  Plaintiff has received treatment for her physical conditions during the relevant period from Dr. Raghu Ramaswamy, M.D., at Crouse Neurosurgery, as well as from Dr. Mallory Sullivan, D.O., and sources at CNY Brain and Spine Neurosurgery, Arthritis Health Associates, Oneida Healthcare, Xavier Medical, ProActive Physical Therapy, Physical Therapy Plus, and the Keever Family Practice.

3

Mentally, plaintiff alleges that she suffers from anxiety, depression, and posttraumatic stress disorder ("PTSD").  She has received mental health treatment consisting of medication management and therapy. Plaintiff has not been hospitalized for psychiatric issues.  During the relevant period, plaintiff treated for her mental conditions with Licensed Clinical Social Worker ("LCSW") Kasi Jones and other sources at Family Counseling Services of Cortland County.  Plaintiff was eventually discharged from services at that facility due to a failure to attend or participate adequately in her treatment.

Plaintiff has reported that she cannot work primarily because her pain makes it difficult for her to do much. The pain in her back makes it so that she cannot play with her children or stand at the stove for more than five minutes while cooking.  She also claims to experience pain in her shoulders and neck, making it difficult to reach, lift, or rotate her head.  Her doctors have prescribed lumbar injections and surgery for her low back, but she wants to try conservative measures first because she is worried about the risks of surgery.  Plaintiff takes only over-the-counter pain medications because narcotics make her heart race and she does not want to get addicted to them.  She has to use an inhaler daily for her asthma.  At home, her daughters do the laundry and care for their three dogs, and her

boyfriend and children clean the house and shop.  She no longer has

hobbies or interests that she can do because of pain, and primarily spends

her day constantly changing positions due to pain.  She reported that she

cannot even go to her children's school activities because she is unable to

sit through them.  Plaintiff alleges that her back impairment has worsened

within the past year and has made her much more limited than when she

initially filed her application for benefits.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social

Security Act on August 29, 2017.  In support of that application, she alleged

a disability onset date of August 29, 2017,[3] and claimed to be disabled

based on PTSD and degenerative disc disease.

A hearing was conducted on June 5, 2019, by ALJ David Romeo, to

address plaintiff's application for benefits.  ALJ Romeo issued an

unfavorable decision on June 14, 2019.  That opinion became a final

determination of the agency on May 12, 2020, when the Social Security

Appeals Council ("Appeals Council") denied plaintiff's request for review of

---

[3]    At the hearing, Plaintiff's counsel requested that the alleged onset date be
amended to June 6, 2018.  Administrative Transcript, Dkt. No. 10 ("AT") at 52.

the ALJ's decision.

    B.    <u>The ALJ's Decision</u>

In his decision, ALJ Romeo applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff had not engaged in substantial gainful activity during the relevant period. Proceeding to step two, ALJ Romeo found that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including asthma, cervical and lumbar degenerative disc disease and disc herniations, cervical and lumbar radiculopathies, status post right ankle fusion with instrumentation, a major depressive disorder, a generalized anxiety disorder, and PTSD.

At step three, ALJ Romeo examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.00, 3.00, 12.04, and 12.06.

ALJ Romeo next surveyed the available record evidence and concluded that plaintiff retains the residual functional capacity ("RFC") to perform less than a full range of light work, with the following limitations:

> the claimant can lift and/or carry up to 10 pounds frequently and up to 20 pounds on occasion, push

6

and/or pull up to 10 pounds frequently, sit for up to six hours in an eight-hour workday, and stand and/or walk for up to six hours in an eight-hour workday. She could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but she could never climb ropes, ladders, or scaffolds. Additionally, the claimant could occasionally operate foot controls with the right lower extremity and frequently reach, handle, finger, and feel with both upper extremities. The claimant can tolerate occasional exposure to weather, extreme heat, extreme cold, wetness, humidity, vibration, and atmospheric conditions, but can never be exposed to high, exposed places or moving mechanical parts. Psychiatrically, the claimant can understand, remember and carry out simple instructions and make simple work related decisions with detailed but uninvolved instruction. She is able to sustain an ordinary routine without special supervision and work at a consistent pace throughout the workday, but not at a production rate pace where each task must be completed within a strict time deadline. Finally, the claimant is able to tolerate occasional interaction with coworkers and the public and frequent interaction with supervisors and can tolerate occasional changes in the work setting.

At step four, ALJ Romeo concluded that plaintiff has no past relevant work. Proceeding to step five, the ALJ consulted a vocational expert regarding how plaintiff's limitations impact the jobs she can perform, and concluded based on the vocational expert's testimony that plaintiff remains able to perform available work in the national economy, citing as representative positions marker, router, and cleaner/housekeeper. Based upon these findings, ALJ Romeo concluded that plaintiff was not disabled

7

at the relevant times.

C.    <u>This Action</u>

Plaintiff commenced this action on July 9, 2020.[4]  In support of her

challenge to the ALJ's determination, plaintiff raises several arguments,

contending that (1) the ALJ erred in accepting the opinions of the

"reviewing" physicians over that of the treating sources, in that he (a) did

not note what specific findings were inconsistent with the opinions of Dr.

Nathan Keever, a treating source, and (b) he failed to adequately explain or

support his adoption of the opinion from non-examining physician Dr. R.

Reynolds; (2) the ALJ mischaracterized or ignored evidence of worsening

in plaintiff's condition beginning in 2018, and inaccurately characterized the

evidence he used to support his findings; (3) the ALJ failed to explain how

the RFC was supported by substantial evidence given that some of the

limitations included were not in Dr. Reynolds' opinion; (4) the ALJ failed to

adequately develop the record given the obvious gaps regarding plaintiff's

mental and cognitive functioning, and in particular failed to obtain

clarification from consultative examiner Jeanne Shapiro, Ph.D., and a

---

[4]      This action is timely, and the Commissioner does not argue otherwise.  It has
been treated in accordance with the procedures set forth in General Order No. 18.
Under that General Order, the court treats the action procedurally as if cross-motions for
judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure.

consultative  intelligence examination regarding plaintiff's intellectual

functioning; and (5) the ALJ's assessment of plaintiff's subjective reports is

based on an incorrect assessment of the relevant factors and is not

supported by substantial evidence due to the ALJ's selective reliance on

only some of the record evidence.  Dkt. No. 12.

Oral argument was conducted in this matter, by telephone, on

January 20, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is subject to a "very deferential" standard of review, and is

limited to analyzing whether the correct legal standards were applied, and

whether the decision is supported by substantial evidence.  *Brault v. Soc.*

*Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d

Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there

is reasonable doubt as to whether the ALJ applied the proper legal

standards, the decision should not be affirmed even though the ultimate

conclusion reached is arguably supported by substantial evidence.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the

Case 5:20-cv-00766-DEP   Document 15   Filed 01/26/22   Page 10 of 44

correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the

second step involves an examination of whether the claimant has a severe

11

impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether

12

that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

  C. <u>Analysis</u>

    1. <u>ALJ Romeo's Assessment of the Opinion Evidence</u>

  Because plaintiff's application for benefits was filed in August of 2017, the new agency regulations regarding the weighing of medical source opinion evidence apply to her claim.  Under those new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but will rather consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule").  An ALJ must articulate in his or her determination how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability and consistency of those opinions.  20 C.F.R. § 416.920c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors

13

related to the source's relationship with the claimant, including the length of

any treatment relationship, the frequency of examinations by the source

and the purpose and extent of the treatment relationship, whether the

source had an examining relationship with the claimant, whether the source

specializes in an area of care, and any other factors that are relevant to the

persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

### a.   Dr. Keever

Plaintiff argues that the ALJ failed to properly support his finding that

the opinion of Dr. Nathan Keever was not persuasive because, although

finding that his opinion is not supported by his own physical examinations

or consistent with the other treatment notes in the record, the ALJ failed to

identify what specific findings in those treatment notes were inconsistent

with or unsupportive of Dr. Keever's opinion.  Dkt. No. 14, at 15.  She also

argues that the ALJ did not accurately summarize the treatment notes and

therefore his vague assessment that those treatment notes were

inconsistent with Dr. Keever's opinion is not sufficient.  *Id.* at 15-16.

On April 24, 2019, Dr. Keever submitted a medical source statement

form in which he provided an opinion regarding plaintiff's functional abilities

related to his diagnoses of panic disorder, disc degeneration, and allergic

rhinitis.  AT 678-80.  Dr. Keever opined that plaintiff's impairments render

her incapable of even low stress jobs, a conclusion that he specifically based on her "previous work experience."  AT 678.  He further opined that plaintiff can walk one city block without rest or severe pain, stand for fifteen minutes at one time and stand or walk for about four hours in an eight-hour workday, sit for fifteen minutes at one time and for about four hours in an eight hour workday, lift and carry less than ten pounds occasionally and ten pounds rarely, hold her head static and handle or finger with the left hand frequently, look down, look up, handle and finger with the right hand, and reach bilaterally only occasionally, turn her head left or right rarely, and never climb ladders and stairs.  AT 679-80.  Dr. Keever further opined that plaintiff requires a job that permits shifting positions at will between sitting, standing, and walking and daily unscheduled breaks for one hour, and that she would be absent from work more than four days per month on average, and would constantly experience pain or other symptoms severe enough to interfere with her attention and concentration to perform simple work tasks. *Id.*

When weighing Dr. Keever's opinion, the ALJ found it to be unpersuasive because it underestimates plaintiff's physical capabilities compared with what is suggested by the medical record, he had only a short-term treating relationship with plaintiff dating back to November 2018,

and his opinion "is not commensurate with his own physical examinations of the claimant as well as the other treatment records seen throughout the medical record."  AT 21.

I find that the ALJ's assessment of Dr. Keever's opinion is consistent with the regulations, and is supported by substantial evidence.  Plaintiff does not contest that the ALJ assessed whether his opinion was consistent with and supported by the record as required by the controlling regulations.  Rather, she argues that the ALJ did not sufficiently identify which particular treatment notes supported his finding such that meaningful review for substantial evidence can be conducted.  Even though the ALJ did not specifically discuss pieces of evidence in the paragraph related to Dr. Keever's opinion, Plaintiff ignores the fact that the ALJ discussed the objective medical and other evidence in detail throughout the decision and made clear that he considered all of the available evidence.[5]  Such discussion is relevant to assessing the ALJ's later conclusion about the supportability and consistency of Dr. Keever's opinion because the ALJ's decision must be read as a whole.  *See Jeanette J. v. Saul*, 19-CV-0795, 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020) (Lovric, M.J.) (finding

---

[5]     To the extent that plaintiff argues that the ALJ failed to consider all of the evidence or misinterpreted evidence, that contention will be discussed in the section of this opinion related to the RFC finding in general.

that the ALJ's discussion of records in a portion of the decision preceding his assessment of the physician opinion was sufficient to allow judicial review of the ALJ's finding that the opinion was or was not consistent with the evidence, noting that "[i]t is proper to read the ALJ's decision as a whole and it would be a needless formality to have the ALJ repeat substantially similar factual analyses"); *Green v. Saul*, 18-CV-2857, 2019 WL 2996502, at *8 (S.D.N.Y. June 19, 2019) (finding any error in the ALJ's perfunctory statement that the physician's opinion was not well supported and inconsistent with other opinions was harmless because it was clear that the treating physician rule was not traversed after considering the ALJ's decision as a whole).  Plaintiff also does not explain how findings she cites in her brief, noting a limited range of motion in her lumbar and cervical spine and a few positive straight leg raising tests, so strongly support the level of restriction Dr. Keever opined that a reasonable factfinder would have to conclude that his opinion was persuasive.  *See Brault*, 683 F.3d at 448 (defining the substantial evidence standard as "we can reject [the ALJ's findings of fact] 'only if a reasonable factfinder would *have to conclude otherwise*'").

As to her cervical spine impairment, treatment notes in the record generally indicate that plaintiff had no significant local tenderness to

palpation, only mildly or moderately limited range of motion, and full or 4/5 strength in her upper extremities.  AT 444, 449, 462, 669, 675, 685. Magnetic resonance imaging ("MRI") testing of her cervical spine from May 25, 2017, showed only mild multilevel intervertebral disc space desiccation with very minimal posterior disc bulging and a straightening of the lordatic curvature; a notation in a treatment note from April 2, 2019, indicated that an updated MRI of her cervical spine showed mild degenerative disc disease and a mild central disc herniation.  AT 263, 685.  Although records from plaintiff's short-lived course of physical therapy in July 2018 indicate that she reported experiencing significant pain with all treatment exercises, those reports are not verified by objective observations beyond the reports that plaintiff was very avoidant, wincing and withdrawing while performing those exercises.  AT 415-16, 423, 424-25, 428-29.  Additionally, there is no objective medical evidence, or any evidence aside from plaintiff's own subjective reports, to corroborate her assertion of severe pain, significant limitation in range of motion of her neck, or numbness, tingling, or burning in her upper extremities.  The ALJ was therefore reasonable in finding that plaintiff's documented mild cervical spine impairment does not impose the degree of significant limitations opined by Dr. Keever.

As to plaintiff's lumbar spine impairment, MRI testing from March 22,

2018, showed a "tiny nodular lesion associated with the distal cauda equina nerve roots at the L5 level," most likely a tiny schwannoma. AT 671. Neurosurgeon Dr. Raghu Ramaswamy noted that this imaging reflected "certain compression of the transiting nerve roots bilaterally," and recommended surgery. AT 663. Further MRI testing from March 13, 2019, revealed a broad-based disc herniation at L4-L5 contacting the exiting nerve roots with moderate bilateral recess narrowing and mild central canal stenosis, as well as a broad-based disc herniation at L3-L4 resulting in mild bilateral recess narrowing and borderline mild diffuse disc bulging at T12-L1, L1-L2, and L2-L3. AT 692-93. On examinations, it was generally observed that plaintiff had spinal point tenderness, muscle spasms, occasional positive straight leg raising on the right, occasional 4/5 or 4+/5 strength particularly in aspects of her right lower extremity, and a few notations of a slightly antalgic gait in late 2017; on many examinations, plaintiff was observed to have a normal gait, intact sensation, symmetric deep tendon reflexes, and good balance. AT 229, 235, 444, 449, 452, 462, 528, 663, 666, 669, 675, 684, 701, 711. Of note, although Dr. Ramaswamy interpreted objective imaging as showing evidence of nerve root compression in March 2018, plaintiff did not demonstrate decreased sensation in her lower extremities, and Dr. Mallory Sullivan noted on one

occasion that, although plaintiff reported decreased sensation on examination, those reports were not consistent with any dermatomal distribution.  AT 711.  Such evidence, while showing some limitation, reasonably supports the ALJ's findings related to Dr. Keever's opinion. Where an ALJ's interpretation of the evidence is reasonable, a court reviewing his or her determination may not substitute its own interpretation or weigh the evidence in a different manner.  *See Petkopoulos v. Comm'r of Soc. Sec.*, 17-CV-0930, 2018 WL 2976003, at *4 (N.D.N.Y. June 12, 2018) (Peebles, M.J.) (finding that, despite the existence of conflicting medical evidence, "[i]t's for the Administrative Law Judge to weigh that evidence and the Court should disturb the outcome of that weighing only if no reasonable factfinder could adopt the position adopted by the [ALJ]"); *Lewis v. Comm'r of Soc. Sec.*, 16-CV-1267, 2018 WL 557869, at *6 (N.D.N.Y. Jan. 16, 2018) (Carter, M.J.) (finding no error where plaintiff's arguments that the objective evidence supported a favorable medical source opinion was an attempt to recharacterize the objective evidence that "ultimately falls short of demonstrating that any reasonable factfinder was compelled to weigh the evidence differently").

        b.   <u>Dr. Reynolds</u>

Plaintiff also contends that the ALJ erred in relying on the opinion of

non-examining state agency reviewing physician, Dr. R. Reynolds, arguing that (a) it was improper for the ALJ to consider whether Dr. Reynolds' opinion was consistent with his RFC finding rather than with the evidence; (b) the ALJ failed to identify what evidence he found to be consistent with or supportive of Dr. Reynolds' opinion; (c) it was inconsistent for the ALJ to rely heavily on Dr. Reynolds' opinion, despite the fact that Dr. Reynolds relied on the consultative examiner's opinion and the ALJ found that consultative opinion to itself be unpersuasive; and (d) the opinion does not account for the documented worsening in plaintiff's physical condition that occurred after Dr. Reynolds rendered his opinion.  Dkt. No. 12, at 16-20.

In his medical assessment form dated December 1, 2017, Dr. Reynolds opined that plaintiff is capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing or walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday, with no additional postural, manipulative, visual, communicative, or environmental limitations.  AT 60-61.  In rendering this opinion, Dr. Reynolds specifically cited MRI findings of plaintiff's cervical and lumbar spine from May of 2017, a treatment note from Canastota Lenox Healthcare from September of 2017, and the findings from consultative examiner Dr. Elke Lorensen's examination of plaintiff.  AT 61.

The ALJ found Dr. Reynolds' opinion to be persuasive because, even though he or she did not personally examine plaintiff and the opinion was rendered one-and-a-half years prior to the issuance of the ALJ's decision, Dr. Reynolds possesses programmatic expertise regarding the Social Security disability program and expertise in his or her field, the reported findings are consistent with the overall conclusion that plaintiff is capable of light work, and the evidence subsequent to his opinion does little to undermine his or her conclusions.  AT 21.

Although plaintiff is correct that an ALJ may not rely on an opinion solely because it is consistent with his or her RFC finding, it is well recognized that a statement by the ALJ acknowledging the consistency of the opinion with the RFC does not constitute error so long as the ALJ has provided other reasons consistent with the regulations for relying on that opinion.  *See Abar v. Colvin*, 15-CV-0095, 2016 WL 1298135, at *4-5 (N.D.N.Y. Mar. 31, 2016) (Suddaby, C.J.) (rejecting magistrate judge's conclusion that the ALJ's statement that an opinion was entitled to weight because it supported her RFC merited remand because the ALJ provided an assessment of all of the relevant factors for assessing opinion evidence and gave four reasons related to those factors as to why the opinion was entitled to weight).  As was discussed, the ALJ provided multiple reasons

for crediting the opinion, including consistency with the record, Dr.
Reynolds' expertise in Social Security adjudication, and his area of
practice.  The ALJ's statement that Dr. Reynolds' opinion was consistent
with the overall conclusion that plaintiff is capable of light work therefore
does not constitute a basis for remand in and of itself.

Plaintiff again argues that the ALJ failed to identify specific evidence
to support his findings related to the supportability and consistency of Dr.
Reynolds' opinion.  I reject that argument for the same reason as was
already discussed related to Dr. Keever's opinion, namely that the ALJ
included a fairly detailed recitation of medical evidence in his decision, and
the fact that ALJ Ramos did not explicitly state which of these treatment
notes supported his findings specifically as to Dr. Reynolds' opinion does
not render his decision unclear or unreviewable.

Plaintiff next argues that it was internally inconsistent for the ALJ to
rely on Dr. Reynolds' opinion because Dr. Reynolds relied heavily on the
findings of Dr. Lorensen, whose opinion the ALJ found to be unreliable.
Dkt. No. 12, at 16-17.  However, the form on which Dr. Reynolds' opinion is
included makes it clear that he did not solely consider or rely upon Dr.
Lorensen's opinion when rendering his own.  Rather, in the "evidence of
record" portion of the assessment, it was noted that the record contained

the examination and opinion from Dr. Lorensen, an examination and

opinion from Dr. Jeanne Shapiro, evidence regarding plaintiff's activities of

daily living, medical records from Arthritis Health Associates, and medical

evidence from Canastota Lenox Health Center.  AT 55-56.  Dr. Reynolds

specifically cited MRI evidence and a treatment note from Canastota Lenox

Health Center, along with Dr. Lorensen's assessment and opinion, when

explaining the basis for his opinion.  AT 61.  The situation in this case is

therefore distinguishable from that presented in *Lohmann v. Colvin*, 12-CV-

0964, 2014 WL 1686822 (W.D.N.Y. Apr. 29, 2014), as case relied on by

plaintiff, in which remand was found to be warranted where the state

agency consultant relied upon by the ALJ "almost exclusively relied on,

without discussion" the consultative examiner's opinion that the ALJ

rejected.  *Lohmann*, 2014 WL 1686822, at *3.  It is also distinguishable in

that, in *Lohmann*, the error was not harmless given that it resulted in the

ALJ finding the plaintiff's mental impairment nonsevere, and thus that

impairment was not considered at subsequent steps of the sequential

analysis.  *Lohmann*, 2014 WL 1686822, at *3.  In this case, the ALJ fully

considered the effect of plaintiff's relevant physical impairments in

formulating the RFC determination, and explicitly considered whether

evidence received after Dr. Reynolds rendered his opinion was or was not

24

consistent with that opinion.  Indeed, as was already discussed, there is no indication in the objective medical evidence that plaintiff has carried her burden of showing that she is unable to perform a range of light work.

Lastly, plaintiff argues that Dr. Reynolds' opinion is not a reliable assessment of her functional abilities for the entire period at issue because she experienced a significant worsening of her physical symptoms beginning approximately in June of 2018.  However, a review of the record does not reveal objective evidence of a worsening in her condition that was so significant as to call into question the ALJ's reliance on Dr. Reynolds' opinion that plaintiff could perform a range of light work.  Evidence prior to June 2018 showed spinal tenderness in the cervical and lumbar spine, occasional weak grip strength or slightly reduced sensation in her right hand, muscle spasm in her lower back, occasional positive straight leg raising, mildly limited range of motion in her cervical spine, moderately limited range of motion in her lumbar spine, slightly limited strength in her upper and lower extremities, and occasional notations of a slightly antalgic gait.  *See e.g.*, AT 224, 227, 229, 235, 462, 503, 528, 663, 666, 669, 675-76.

By comparison, evidence after June of 2018 shows limited range of motion in plaintiff's cervical or lumbar spine that was not noted to be worse

than previously, ankle pain, diffuse tenderness to palpation of her spine and – on one occasion – her right trapezius, occasional positive straight leg raising, and slightly decreased strength in her right shoulder and right hip; her gait and stance were generally noted to be normal. *See e.g.*, AT 439, 444, 449, 452, 685, 701, 706, 711, 726. Additionally, although plaintiff reported significant pain in response to touch or activities to providers during physical therapy and on some examinations, objective findings did not corroborate her level of pain, and treating physician Dr. Mallory Sullivan noted on one such examination that, despite plaintiff's presentation, she believed, based on plaintiff's records and her examination, that plaintiff would be fully able to work in the future, a conclusion that she reiterated a few months later when plaintiff requested that she complete disability paperwork. AT 702, 712. Although these statements that plaintiff is able to work address an issue reserved to the Commissioner and therefore are not entitled to any weight, they reinforce the conclusion – supported by a review of the medical evidence – that plaintiff's condition had not worsened to such a significant extent as alleged after June of 2018. Notably, because the objective findings on examinations did not significantly worsen after the time Dr. Reynolds' opinion was rendered, I find that the ALJ reasonably found that Dr. Reynolds' inability to review more recent records

did not merit rejecting his opinion that plaintiff was capable of a range of light work.

I note, moreover, that to the extent there was some worsening in terms of notations of somewhat limited strength or notations of positive straight leg raise tests, the ALJ did not adopt Dr. Reynolds' opinion wholesale. As plaintiff acknowledges, the ALJ also included in his RFC finding limitations related to her abilities to balance, stoop, kneel, crouch, crawl, climb, operate foot controls with her right lower extremity, reach, handle, finger, feel, and tolerate environmental or hazardous conditions that were greater than what was opined by Dr. Reynolds. The ALJ therefore appears to have accounted for the fact that the record showed additional limitations that were not apparent from the earlier records reviewed by Dr. Reynolds.

To the extent that those additional limitations were not based on an opinion, I find that they are nonetheless properly supported. Firstly, although plaintiff has argued that the ALJ failed to provide more weight to Dr. Keever's opinion, Dr. Keever offered no opinion on plaintiff's ability to perform postural activities other than climbing, choosing instead to leave that portion of the medical source statement form blank, and, although he opined that plaintiff could only occasional handle and finger with the right

hand and reach bilaterally, as was already discussed, the ALJ's finding that

those limitations were inconsistent with the objective evidence, including

Dr. Keever's own observations, is supported by substantial evidence.  As

for the plaintiff's postural restrictions, the evidence in the record is not

inconsistent with limitations to only occasionally performing those

activities.[6]  Similarly, the inclusion of limitations in various environmental

abilities to occasional or never is more favorable than any of the opinion

evidence of record, and, in the absence of any indication that even greater

restrictions were warranted, there was no error in the ALJ's inclusion of

such limitations in the RFC.

2.   Alleged Mischaracterization of the Evidence and Failure
to Explain How the RFC Determination is Supported

Plaintiff argues throughout her brief that the ALJ erred by

mischaracterizing the evidence in the record and also cherry-picking

portions that are favorable to his desired outcome while ignoring evidence

that shows greater limitations consistent with disability.  Dkt. No. 12, at 13-

21.

As to mischaracterization or misrepresentation of the evidence,

---

[6]     I note that, although the ALJ found Dr. Lorensen's opinion to be generally of little
value because it was based on estimation rather than a medical assessment of
plaintiff's observed abilities, Dr. Lorensen's opinion finding moderate limitation in
bending is generally consistent with the ALJ's finding of occasional postural activities.
AT 342.

plaintiff points particularly to the ALJ's statements that "[t]here is no indication that the claimant required any surgical procedures for her physical impairments" and that the "diagnostic imagings did not present her with a debilitating physical condition."  AT 20.  Specifically, she maintains that surgery for her lumbar spine impairment was recommended, and the ALJ reached an erroneous conclusion about the diagnostic imaging because he failed to consider MRI testing results of the lumbar spine from March 2018.  Dkt. No. 12, at 17-19.

Although the ALJ was correct that there is no objective evidence to support any recommendation for surgery for her cervical spine, *see* AT 529 (Dr. Ramaswamy stating that plaintiff does not need surgical intervention for her cervical spine), he was incorrect to the extent he intended to find that there had been no recommendation for surgery for her lumbar spine, as the making of such a recommendation is well-documented by the record.  However, despite the fact that surgery was recommended, it is also indisputable that plaintiff continued to decline to undergo any such surgery for multiple years, explicitly stating that she preferred to continue to use conservative methods like pain medication and physical therapy to address her pain.  A treatment note from July 2018 indicates that plaintiff had recently been discharged from Dr. Ramaswamy's neurosurgery practice,

which plaintiff claimed was because she did not want surgery, although the practice's notes suggest that it was a result of her failure to follow through with pain management and physical therapy.  AT 709.  One of the most recent treatment notes, from April of 2019, indicates that plaintiff was continuing to do physical therapy exercises at home and taking non-steroidal anti-inflammatory ("NSAID") medications for pain, and it was recommended that she undergo a right L4-L5 epidural steroid injection, but no mention was made of surgery.  AT 685.  Thus, even though surgery was recommended at one point, it was not unreasonable for the ALJ to conclude that plaintiff's elective failure to undergo that surgery, or to even comply with the prescribed conservative treatment, suggested that surgical intervention was not "required," in the sense of being necessary for her to perform work at the level of the RFC.

As to the ALJ's statement about the objective imaging not substantiating plaintiff's claim of a "debilitating" condition, I cannot say that the ALJ's interpretation was unreasonable.  As was already discussed previously, the imaging of plaintiff's cervical spine showed essentially mild degenerative or other changes, and no interpretation by a medical source suggests that that represents a debilitating condition.  Although Dr. Ramaswamy interpreted the imaging of plaintiff's lumbar spine as

30

suggesting surgery would be appropriate, imaging showed herniations causing only mild or moderate effects on the spine.  Even crediting Dr. Ramaswamy's interpretation that the March 2018 MRI showed compression of a nerve root, this, by itself, does not indicate the existence of a debilitating condition.  As was already discussed, even if nerve root compression was present, there were no objective findings on examination of decreased sensation or any other symptoms in a dermatomal distribution resulting from that compression.  Given the ALJ's consideration of the entire record, it was not unreasonable for him to assess that the objective imaging did not demonstrate a "debilitating" condition, and such a statement does not misrepresent the evidence.  Nor does the fact that the ALJ failed to explicitly discuss the March 2018 MRI of the lumbar spine suggest he ignored evidence of worsening of plaintiff's lumbar spine condition; indeed, the ALJ explicitly discussed the later 2019 MRI showing a disc herniation contacting the bilateral exiting nerve roots at L4-L5.  I therefore find that the ALJ did not misrepresent the evidence as alleged by plaintiff, and further that, even if his statements could be interpreted as such, that error would be harmless because other substantial evidence supports the ALJ's overall finding.

As to plaintiff's argument that the ALJ "cherry-picked" evidence by

relying on select evidence that supported his finding while ignoring other evidence showing greater limitations, it is well-established that an ALJ need not discuss every piece of evidence in the record in order to show it was considered.  *See Shari Lee Z. v. Saul*, 19-CV-0268, 2019 WL 6840134, at *4 (N.D.N.Y. Dec. 16, 2019) (Suddaby, C.J.) (noting that "the relevant legal standards do not require the ALJ to discuss all of the evidence, but rather only to show that her decision is supported by substantial evidence"); *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 208 (N.D.N.Y. 2012) (Suddaby, J.) ("The ALJ is not required to specifically discuss each piece of evidence considered.").  Of note, the ALJ spent five pages of his thirteen-page decision detailing the plaintiff's treatment history in chronological order, a summary that included instances of findings of tenderness, positive straight leg raising tests, decreased strength, abnormal gait, and other observations that plaintiff argues support greater limitations.  The ALJ's discussion of the evidence in this case is a far cry from selectively citing only evidence that is favorable to the ALJ's findings.  Plaintiff's argument in this respect is therefore without merit.

Plaintiff additionally argues that, even if the ALJ properly credited the opinion of Dr. Reynolds, he failed to explain what evidence supports the limitations in the RFC related to plaintiff's abilities to balance, stoop, kneel,

crouch, crawl, climb, operate foot controls, reach, handle, finger, feel, and tolerate occasional exposure to hazards, given that Dr. Reynolds did not offer an opinion that includes any such limitations.  Dkt. No. 12, at 21-22.  Specifically, plaintiff argues that, without any medical opinion supporting these limitations, the ALJ improperly substituted his own analysis of the medical evidence for the opinions of the treating or examining sources.  *Id.* However, as was already discussed above, the ALJ's inclusion of supported limitations despite the absence of any opinion expressing those specific limitations is not error based on the evidence.  Certain limitations, such as most of the postural and environmental limitations, are either not inconsistent with the opinion evidence present in this case, given that Dr. Keever generally did not opine on whether such limitations were or were not present, or are more restrictive than Dr. Reynolds' opinion, given that he found no such limitations were present.  Additionally, to the extent that limitations related to use of the upper extremities are less restrictive than those opined by Dr. Keever, the ALJ properly supported his finding in that respect; the ALJ was not required to adopt Dr. Keever's limitations or none at all merely because of the absence of an opinion specifically stating the limitations the ALJ ultimately found.  Indeed, the Second Circuit has recognized that the ALJ need not point to opinion evidence to support

every specific restriction in the RFC so long as "'the record contains

sufficient evidence from which an ALJ can assess the [claimant's] residual

functional capacity.'"  *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-

10 (2d Cir. 2020) (finding no gap in the record despite absence of an

opinion related to certain restrictions in the RFC because "the treatment

notes were in line with the ALJ's RFC determinations" and the plaintiff

failed to adduce any medical evidence inconsistent with those

determinations) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29,

34 (2d Cir. 2013)); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x

5, 8-9 (2d Cir. 2017) (finding no error where the ALJ's findings were based

on and supported by the treating physician's medical records, even if the

ALJ rejected that same treating physician's medical source statement).

Because the nonexertional limitations in the RFC are supported by the

medical record, the ALJ did not commit error in including them.

In sum, I find that because the ALJ properly weighed the opinion

evidence and the various limitations included in the RFC determination are

supported by the record, plaintiff's arguments that the RFC is unsupported

by substantial evidence must be rejected.

### 3.   Development of the Record

Plaintiff next argues that the ALJ erred in failing to develop the record

by not obtaining a consultative examination specifically regarding plaintiff's intellectual functioning and/or seeking clarification from Dr. Shapiro regarding internal inconsistencies in her examination report related to plaintiff's cognitive abilities.  Dkt. No. 12, at 22-23.  To support this argument, plaintiff cites to her reported history of special education due to a learning disability while in school, Dr. Shapiro's notation that her intellectual functioning was estimated to be in the deficient range, and Dr. Shapiro's inclusion of a diagnosis of "[rule out] intellectual disability."  *Id.*

Contrary to plaintiff's argument, the ALJ did not ignore the available evidence related to cognitive deficits.  The ALJ noted, in finding that plaintiff was only moderately limited in the area of understanding, remembering, and applying information, that although she reported learning and memory problems, the record documented that she was able to provide information about her health, describe her past work history, follow instructions by healthcare providers, comply with treatment, and respond to questions from medical providers.  AT 14.  The ALJ also acknowledged that Dr. Shapiro observed that plaintiff had a somewhat limited general fund of information and her intellectual functioning was in the deficient range, as well as Dr. Shapiro's opinion that plaintiff had no-to-moderate limitations in relevant functional areas.  AT 17.  As was already discussed above, the fact that the

Case 5:20-cv-00766-DEP   Document 15   Filed 01/26/22   Page 36 of 44


ALJ did not specifically discuss that plaintiff had been involved in special education while in school does not mean he failed to consider that fact.[7]

It is well-established that an ALJ "is not required to order a consultative examination if the facts do not warrant or suggest the need for it." *Jones v. Colvin*, 16-CV-0044, 2017 WL 3016839, at *6 (N.D.N.Y. July 14, 2017) (Suddaby, C.J.) (citing *Tanksis v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013); *Lefever v. Astrue*, 07-CV-0622, 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010) (Mordue, J.), *aff'd*, 443 F. App'x 608 (2d Cir. 2011); and *Gorman v. Colvin*, 14-CV-0103, 2015 WL 1383823, at *4 (N.D.N.Y. Mar. 25, 2015) (McAvoy, J.)).  In general, "passing references in the record to a claimant's low intelligence do not trigger an ALJ's obligation to order intelligence testing, particularly where other evidence of record, such as the claimant's education, work history, and activities of daily living, does not suggest a severe cognitive impairment." *Jones*, 2017 WL 3016839, at *6 (quoting *Wallace v. Colvin*, 120 F. Supp. 3d 300, 305 (W.D.N.Y. 2015)).

In this case, the only evidence of an intellectual impairment is

---

[7]      I note also that plaintiff's reports about special education are not wholly consistent throughout the record.  Although she reported to Dr. Shapiro and to providers at Family Counseling Services that she was in special education, she stated in her application for benefits that she did not attend special education classes.  AT 150, 334, 356.  In addition, plaintiff did not mention whether she had special education services when testifying about her education at the hearing. AT 36.

passing references to plaintiff's placement in special education classes and

Dr. Shapiro's estimate of deficient intellectual functioning.  Notwithstanding

plaintiff's involvement in special education, the record contains her

testimony from the hearing that she stopped going to school not because of

intellectual difficulties, but rather because of the death of her young son.

AT 36.  She reported abilities to perform self-care, manage money, and

follow instructions; many of her other activities of daily living such as

preparing meals, driving, shopping, cleaning, or doing laundry are noted to

be limited due to her reported physical pain and limitations, not because of

any intellectual or cognitive deficits.  She also variously reported that she

stopped working due to her ex-husband, the employer no longer needing

her, and her physical impairments, but there is no indication that any

intellectual deficits interfered with her ability to perform her work in the past.

The record additionally shows that plaintiff was able to seek and make

informed choices about her medical care related to her physical and mental

health impairments.  Dr. Shapiro noted that, despite her estimated deficient

intellectual functioning, plaintiff had intact attention, concentration, and

memory, and was able to count and generally do simple calculations.  AT

337.

    Plaintiff's additional contention that the ALJ should have recontacted

Dr. Shapiro to resolve an inconsistency between her assessment of mild and moderate limitations and her statement that the results of her examination were consistent with psychiatric problems that may interfere with plaintiff's ability to function on a daily basis is similarly unavailing. Plaintiff does not explain how that statement is, in fact, inconsistent with Dr. Shapiro's opinion.  Indeed, a finding that plaintiff has various mild or moderate limitations is an acknowledgement that plaintiff's mental impairments in fact interfere with her daily work-related functioning – it recognizes that those impairments limit her to the relevant degree.  I therefore find that there was no internal inconsistency for the ALJ to resolve.

Because the evidence in the record is not suggestive of a cognitive impairment that would impact plaintiff's work-related functioning, I find that the ALJ did not err in failing to obtain a consultative intelligence examination, and plaintiff's arguments to the contrary are rejected.

        4.    The ALJ's Evaluation of Plaintiff's Subjective Complaints

In her final point, plaintiff argues that the ALJ failed to properly assess her subjective reports of her symptoms and limitations in that he (a) selectively cited evidence in support of his finding while ignoring evidence that contradicted it and misrepresented certain evidence, particularly

38

related to the need for surgical procedures and the diagnostic imaging, (b) improperly assessed whether her complaints were consistent with his RFC rather than the evidence in the record, (c) failed to explain how her complaints were inconsistent with the objective evidence as a whole, and (d) failed to identify specific complaints or factors related to what he was discounting.  Dkt. No. 12, at 23-25.

In arriving at a proper determination, an ALJ must take into account subjective complaints in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  However, the ALJ is not required to blindly accept the subjective testimony of a claimant.  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Marcus*).  If the claimant's testimony concerning the intensity, persistence or limiting effects associated with his or her impairments is not fully supported by clinical evidence, then the ALJ must consider additional factors in order to assess that testimony, including (1) daily activities, (2) location, duration, frequency and intensity of symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of any medications taken, (5) other treatment received, and (6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi); SSR 16-3p.

If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The ALJ's decision need not contain a discussion of all of the potentially relevant factors listed above, so long as it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision"). Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In making his determination, the ALJ cited the "essentially routine and/or conservative" nature of the treatment plaintiff had received, which

consisted of physical therapy and medication management, noting also that "[t]here is no indication that the claimant required any surgical procedures for her physical impairments."  AT 20.  The ALJ also highlighted the consistency of objective findings on examinations over time with no appreciable worsening and the fact that diagnostic imaging did not show a debilitating physical condition.  AT 20.

Plaintiff again argues that the ALJ's phrasing that her subjective reports were accepted only "to the extent that she has a reduced residual functional capacity for work activities" indicates that he did not apply the appropriate standard for assessing those subjective reports.  However, this argument fails for the same reasons as were discussed above related to the RFC.  Specifically, despite making this statement, the ALJ provided other reasons based in the regulatory factors to support his finding, and any such error is therefore harmless.  *See Delk v. Astrue*, 07-CV-0167, 2009 WL 656319, at *4 (W.D.N.Y. Mar. 11, 2009) (finding no error in the ALJ's credibility finding where, although the ALJ found the subjective reports credible only to the extent consistent with the RFC for sedentary work, the decision discussed the objective medical evidence and plaintiff's reported daily activities that provided implicit reasons based in the regulatory factors to support the credibility finding).

As to plaintiff's arguments that the ALJ made misrepresentations regarding surgery and the objective imaging, those arguments are rejected for the same reasons as were discussed previously related to the RFC finding.  The ALJ was correct in noting that plaintiff's treatment was essentially conservative in nature; in April of 2019, it was noted that her only treatment consisted of doing at-home physical therapy exercises and taking over-the-counter NSAID pain medication.  AT 685.  It was noted that, at that time, the conservative measures she reported using for relief were "time and rest."  AT 682.  Such a low level of treatment is reasonably not consistent with the essentially debilitating limitations that plaintiff alleged.

The ALJ also found that her subjective reports were not supported by the objective medical evidence of record.  Although plaintiff again argues that the ALJ failed to support this finding by failing to cite what specific evidence was inconsistent with which specific subjective complaints, as with the RFC, the ALJ's voluminous summary of the objective medical evidence allows me to glean the rationale behind this finding.

Lastly, plaintiff argues the ALJ's finding is deficient because it fails to identify which of the regulatory factors he relied upon.  However, an ALJ is not required to list and analyze the prescribed factors in a rote fashion, nor is he or she required to even explicitly consider all of the listed factors.  The

ALJ's decision in this instance is sufficiently clear such that I can glean that

there are valid reasons supporting his finding regarding plaintiff's subjective

reports. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (noting

that "[w]hile it is not sufficient for the ALJ to make a single, conclusory

statement that the claimant is not credible or simply to recite the relevant

factors . . . , remand is not required where the evidence of record permits

us to glean the rationale of an ALJ's decision"). Because the ALJ's

assessment of plaintiff's subjective reports is supported by substantial

evidence, plaintiff's arguments regarding this issue must be rejected. *See*

*Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) (noting that it is the

function of the Commissioner to resolve evidentiary conflicts and assess

the credibility of witnesses, and a reviewing court has "no reason to

second-guess the credibility finding . . . where the ALJ identified specific

record-based reasons for his ruling").

IV.   SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the

plaintiff in support of his challenge to the Commissioner's determination, I

find that the Commissioner's determination resulted from the application of

proper legal principles and is supported by substantial evidence.

Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings

(Dkt. No. 13) be GRANTED, plaintiff's motion for judgment on the pleadings

(Dkt. No. 12) be DENIED, the Commissioner's decision be AFFIRMED, and

plaintiff's complaint be DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:     January 26, 2022
           Syracuse, NY                    _____
                                           DAVID E. PEEBLES
                                           U.S. Magistrate Judge